IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD D. GILL,<br>　　　　Petitioner,<br><br>　　v.<br><br>KEN CLARK, Warden<br>　　　　Respondent. | CASE NO.　　CIV S-08-1646 BJR<br><br>ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS |

## INTRODUCTION

Petitioner is a California state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner alleges that he is entitled to federal habeas relief because: (1) the victim's testimony was admitted at trial in violation of his Sixth Amendment right to confrontation as articulated by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354 (2004); and (2) the evidence presented at trial was insufficient to establish that he had cohabitated with the victim as required by section 273.5 of the California Penal Code.

## PROCEDURAL HISTORY

Petitioner waived his right to a jury trial, and on December 9, 2005, the trial court found him guilty of assault with a deadly weapon by means likely to produce great bodily injury (Cal. Pen. Code, §245, sub., (a)(1)) and infliction of a corporal injury upon a cohabitant (§ 273.5). He was found not guilty of first degree residential burglary (§ 459). The trial court sentenced Petitioner to twelve years in prison.

Petitioner timely appealed to the Court of Appeal for the State of California, Third Appellate District. The Court of Appeal affirmed the judgment on October 1, 2007, in an unpublished opinion. (Dkt. No. 12, Lod. Doc. 4.) Petitioner filed a petition for review on November 8, 2007, which was denied by the California Supreme Court on December 17, 2007. (*Id*. at Lod. Docs. 5 and 6.) He filed the present petition on July 17, 2008.

## FACTUAL BACKGROUND

Late August 6, 2005 or early the next morning, Amanda Behlen observed a man pull up on a motorcycle in front of the house across the street. As he did so, Laurie Cantwell came out of the house. The man and Ms. Cantwell yelled at each other and Ms. Cantwell ran back into the house and shut the door. The man then kicked the door down and went into the house. The man eventually came out of the house and drove off in a van that had been parked outside the house.

After the man left, Ms. Cantwell came outside. Her hand was wrapped in a towel, which she held to her chest, and she had what appeared to be a cut on her head and blood on her face and neck. Officer Prosise was called to the scene. When he arrived, he asked Ms. Cantwell what happened. She stated that she did not want to tell him because she was worried about "getting hurt worse." He responded that other police officers were on the way and that she was going to be okay. Ms. Cantwell then told him that "her boyfriend, Danny, had hit her with a table" and that he had left in their van.

Office Prosise went inside the house and found a wooden table or TV tray that had been broken and appeared to have blood and hair on it. Ms. Cantwell was taken to the hospital where she was treated. She had a laceration on her head and a nearly circumferential laceration on her left index finger that extended to the sheath around the tendon.

The treating physician testified at trial that Ms. Cantwell told him that her "live-in male friend" had accosted her with a wood food tray. Carly Mund, who lived in the house where Ms. Cantwell was assaulted, testified that she saw Petitioner run outside the house with a knife as Ms. Cantwell sat in the recliner screaming for someone to call an ambulance. Brenda Metz, Ms. Cantwell's sister, testified that Ms. Cantwell and Petitioner had been "boyfriend, girlfriend" for a "couple of years" and had lived together at his mother's home and in a motor home. Ms. Cantwell was unavailable for trial.[1]

## GROUNDS FOR RELIEF

Petitioner claims that he is entitled to federal habeas relief because: (1) Ms. Cantwell's testimony was admitted at trial in violation of his Sixth Amendment right to confrontation as articulated by the Supreme Court in *Crawford*; and (2) the evidence presented at trial was insufficient to establish that he had cohabitated with the Ms. Cantwell as required by section 273.5 of the California Penal Code.

## DISCUSSION

A.  *Standard of Review*

Habeas corpus is an "extraordinary remedy" available only to those "persons whom society has grievously wronged and for whom belated liberation is little enough compensation." *Brecht v. Abrahamson*, 507 U.S. 619, 633-34, 113 S.Ct. 1710 (1993). Because Petitioner filed his

---

[1] The statement of facts is taken from the unpublished opinion of the Third District Court of Appeal (Dkt. No. 12, Lod. Doc. 4) and is presumed correct. 28 U.S.C. §2254(d)(2),(e)(1).

habeas petition after April 24, 1996, the provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) govern this case and pose special burdens. *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc). Under the AEDPA, when reviewing a state criminal conviction, a federal court may grant a writ of habeas corpus only if a state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or "if the state court confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a result different from" that precedent. *William v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495 (2000). A state court decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle" from a Supreme Court decision "but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. In considering whether a state court unreasonably applied Supreme Court precedent, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

B.      *The Trial Court's Admission of Ms. Cantwell's Statement Constituted Harmless Error*

Petitioner argues that the trial court should have excluded Ms. Cantwell's statement to Officer Prosise because she did not testify at trial and he did not have a prior opportunity to

4

cross-examine her. The Confrontation Clause of the Sixth Amendment bars admission of testimonial statements of a witness who did not appear at trial unless she was unavailable to testify, and the defendant had a prior opportunity for cross-examination. *Crawford,* 541 U.S. at 59. The California Court of Appeal declined to decide whether Ms. Cantwell's statement was testimonial under *Crawford*. Rather, the Appellate Court held that if the trial court had erred in admitting the statement, the error was harmless beyond a reasonable doubt. (*See* Dkt. 12, Lod. Doc. 4 at 8 *citing Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824 (1967).) The Appellate Court concluded that given the evidence, the trial court would have determined that Petitioner was Cantwell's assailant even if her statement to Officer Prosise had not been admitted into evidence. (*Id.*, Dkt. 12, Lod. Doc. 4 at 8.)

In order to grant federal habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine: (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent; and (2) that the petitioner suffered prejudice under *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710 (1993) from the constitutional error. *Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005) *cert. denied*, 547 U.S. 1059, 126 S.Ct. 1660 (2006). Both of these tests must be satisfied before relief can be granted and, because both must be satisfied, a court need not address them in any particular order. *Inthavong*, 420 F.3d at 1061.

The California Appellate Court correctly identified the harmless-beyond-a-reasonable-doubt standard, and found that the evidence that Petitioner assaulted Ms. Cantwell was "overwhelming." The Appellate Court pointed to the following as evidence that Petitioner assaulted Ms. Cantwell: (1) the emergency room doctor's testimony that Ms. Cantwell told him that her "live-in male friend" assaulted her; (2) the neighbor's testimony that she saw a man and

5

Ms. Cantwell yelling at each other, that the man kicked down the front door of the house after Ms. Cantwell ran inside, that Ms. Cantwell was uninjured when the man arrived, but after he left, she appeared injured, and that the man drove off in the van after he left the house; and (3) Ms. Mund's testimony that Petitioner was in the residence during the time the neighbor was watching from her window, that Petitioner ran outside as Ms. Cantwell screamed for someone to call an ambulance, and that the van drove away a minute or so after Petitioner ran outside. (*See* Dkt. No. 12, Lod. Doc. 4 at 7-8.)

This court is satisfied that the Appellate Court's harmless error ruling is not contrary to Supreme Court precedent. Even without Ms. Cantwell's statement to Officer Prosise, the circumstantial evidence was sufficient for the trial court to conclude that Petitioner was the person who assaulted Ms. Cantwell. Accordingly, it is objectively reasonable for the Appellate Court to rule that any error in admitting Ms. Cantwell's statement was harmless beyond a reasonable doubt.

C.   *Petitioner was not Denied Due Process by the Trial Court's Finding that He had Cohabitated with Ms. Cantwell*

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970). A Petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds. In *Jackson v. Virginia*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). After AEDPA, federal courts must apply the standards of *Jackson* with an additional layer of deference. *Juan H.*

*v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) *cert. denied*, 546 U.S. 1137, 126 S.Ct. 1145 (2006). Thus, a federal court must ask whether the state court decision reflected an "unreasonably application of" *Jackson* and *Winship* to the facts of the case. *Id.*

Petitioner argues that he was denied due process of law because the evidence presented at trial was insufficient to prove that he and Ms. Cantwell were "cohabitants" within the meaning of section 273.5 of the California Penal Code. Section 273.5 provides that any person who willfully inflicts corporal injury resulting in a traumatic condition upon a "cohabitant" or "former cohabitant" is guilty of a felony. The term cohabitant "requires something more than a platonic, rooming-house arrangement." *People v. Holifield*, 205 Cal.App.3d 993, 999 (1988). It "has been interpreted 'broadly' to refer to those 'living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy.'" *People v. Moore*, 44 Cal.App.4th 1323, 1333 (1996) *quoting Holifield*, 205 Cal.App.3d at 1000.

At trial, Ms. Cantwell's sister, Ms. Metz, testified that Petitioner and Ms. Cantwell had been "[b]oyfriend, girlfriend" for a "couple years" and had lived together at his mother's home and in a motor home. Based on this testimony, the trial court determined that there was more to Petitioner's relationship with Ms. Cantwell than just a casual or platonic, rooming-house arrangement. On appeal, the Appellate Court held that the trial court was entitled to infer from Ms. Metz's testimony that Petitioner and Ms. Cantwell, at a minimum, once cohabitated, and as such, substantial evidence supported Petitioner's conviction that he inflicted corporal injury upon a cohabitant. (*See* Dkt. No. 12, Lod. Doc. 4 at 10.)

Petitioner argues that Ms. Metz's testimony could have connoted something other than the relationship required for conviction under section 273.5. He argues that merely living together is not enough to establish cohabitation under section 273.5 Rather, It must also be

7

shown that Petitioner and Ms. Cantwell shared a "sexual or amorous" relationship. (Dkt. No. 1, p. 19 *citing Holifield*, 205 Cal.App.3d at 999.)

This court concludes that after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of section 273.5 beyond a reasonable doubt. Ms. Metz's testimony was substantiated by other witness testimony. For instance, Ms. Cantwell told Officer Prosise that her boyfriend hit her with a table and the emergency room doctor testified that Ms. Cantwell informed him that her live-in male friend accosted her with a wood tray. (Dkt. No. 12, RT at 41 and 54.) Even if Ms. Cantwell's statement to Officer Prosise had not been admitted, Ms. Metz's testimony alone was more than sufficient to establish the requisite relationship. As such, the decision of the California Court of Appeal reflected a reasonable application of *Jackson* and *Winship* to the facts of this case and must not be disturbed.[2]

## CONCLUSION

Based on the foregoing discussion, the court denies the petition for writ of habeas corpus. The case is hereby dismissed.

DATED this 17th day of May, 2010.

/s/ Barbara Jacobs Rothstein

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[2] Since this court finds that Petitioner's conviction for inflicting a corporal injury upon a cohabitant is valid, this court need not address his remaining contention that the great bodily injury enhancement must be stricken, since it is dependent upon the reversal of his conviction for corporal injury upon a cohabitant.